### LATOUR v. SOUTHERN RY.

1. RAILROADS—CONNECTIONS—CHARGE.—Where an action is not based on the failure of a railroad company to make connections with trains of another road, it is not reversible error to charge that railroad companies do not guarantee connections especially where connection has been made.

2. IBID.—IBID.—CONTRACT.—Statement by a ticket agent at sale of ticket that train would make close connection at a certain point is not a guarantee of connection.

3. CHARGE.—Statement made by Judge in his charge based on admission in pleading, is not a charge on facts.

4. RAILROAD—PASSENGER—DAMAGES.—If passenger be carried a route not called for by his ticket against his will, he is entitled to such damages as he may suffer by reason of the deflection.

5. IBID.—IBID.—NEGLIGENCE.—After a carrier has received a passenger, it is required to exercise the highest degree of care for his safety and to exempt him from injury and exposure, and in making connections it must exercise such care and effort to avoid delay as is due under all the circumstances. What are some circumstances to be considered stated.

Before LEROY F. YOUMANS, special Judge, Greenwood. Reversed.

Action by Rosa Latour and her husband against Southern Railway. From judgment for defendant, plaintiffs appeal.

*Messrs. Sheppards & Grier,* for appellants. *Mr. Grier* cites: *Conversation between agent and purchaser of ticket at*

*time of purchase admissible as to contract of carriage:* 66 Fed. R., 711; 143 U. S., 60. *Ordinary care with respect to passengers is not the rule:* 14 L. ed., U. S., 509; 23 Ibid., 899; 20 L. R. A., 316, 812; 39 L. R. A., 164; 32 W. Va., 370; 5 Ency., 2 ed., 558; 39 S. C., 170; 60 S. C., 58. *If plaintiff's show injury at hands of defendant, burden is cast on it to repel negligence:* 5 Rich. L., 17; 9 Rich. L., 89; 55 S. C., 391; 58 S. C., 494; 62 S. C., 136.

*Mr. T. P. Cothran,* contra (oral argument).

May 8, 1905. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff, Mrs. Latour, seeks to recover $1,000 damages of the defendant railway company on account of the negligent, careless, wanton and wilful conduct of the defendant, its agents and officers, in the matter of the treatment of the plaintiff, who was a passenger on one of its passenger trains, on the 8th December, 1902. The action came on for trial in the Court of Common Pleas for Greenwood County before special Judge Youmans and a jury. After full testimony and the charge to the jury, the jury rendered a verdict in favor of the defendant, on which judgment was duly entered. The plaintiff now appeals to this Court on the following exceptions:

"I. It was error in his Honor to charge the jury as follows: 'Now, gentlemen, as to making connections with trains, railroad companies do not guarantee the making of connections. If they sold you a ticket and guaranteed connection, then you would have a cause of action, but they do not guarantee connections,' the error being:

"(a) In so charging the jury, his Honor gave them an entirely incorrect idea of the law of this case, and lead the jury to believe that unless the company had guaranteed connections at Greenville or Atlanta, the plaintiff had no case whatever—the law is that a railway company is charged with the duty of running its train according to schedule time, and

can only be excused from so doing by accident, or from causes which reasonable care could not provide against.

"(b) In so charging the jury, his Honor entirely eliminated from this case the testimony of plaintiff that the agent of the company represented that she would make connection at Greenville at the time of the sale of said ticket; it being respectfully submitted that a railway company is bound by the representations of its ticket agent to the purchaser of a ticket made at the time of the sale of the ticket.

"(c) It is alleged in the complaint that at the time of the purchase of the ticket, defendant represented to plaintiff that she would connect at Greenville, upon which point testimony was offered by plaintiff and her witnesses, and in charging that defendant did not guarantee connections, his Honor entirely eliminated this testimony and these allegations from the case, and further charged directly on the facts of the case by telling the jury that the defendant did not guarantee connections, in violation of the Constitution, which prohibits a Circuit Judge from charging on the facts of the case.

"(d) If it be true, as alleged in the complaint and as testified to by plaintiffs' witness, that defendant did represent to plaintiff at the time of the purchase of the said ticket that she would make close connection at Greenville, it is submitted that this in law amounts to a guarantee which would be binding on the defendant, and his Honor had no right to instruct the jury that defendant did not guarantee connections, and in so doing his Honor, in addition to charging on the facts of the case, in violation of the Constitution, which forbids him from charging on the facts, ignored these allegations and the testimony, and also placed an entirely erroneous construction on said allegations and said testimony, the same amounting in law to a guarantee of connection, and his Honor should not have submitted this question to the jury.

"(e) The defendant was certainly bound by the representation of its agent, and his Honor committed error charging

that it did not guarantee connections, and further instructed the jury that railroads do not guarantee connections.

"II. It is further submitted, that his Honor further erred in charging the jury as follows: 'The other side claims that she abandoned her trip,' because:

"(a) In so charging the jury, his Honor charged on the facts of the case, and stated the testimony to the jury, in violation of the Constitution, which prohibits a Circuit Judge from charging on the facts, because the answer of the defendant was simply a general denial, but in the testimony of the defendant's witnesses, one of the witnesses testified that plaintiff had abandoned her trip.

"III. His Honor erred in charging the jury as follows: 'She says if she had been permitted to remain in there, she would have made connection. She says it was all caused by the carelessness, negligence, wilful and wanton misconduct of the servant in charge of this train of cars, in ordering her to vacate her seat and take passage in a car that went by Anderson and Seneca. You see what she says it was all caused by?' This being a charge on the facts of the case, in violation of the Constitution, which prohibits a Circuit Judge from charging on the facts of a case, and his Honor in charging the jury, in the language herein mentioned, in quoting the testimony to the jury, was charging the jury on the facts of the case, and repeating to the jury the testimony in the case, in violation of the Constitution, which prohibits a Circuit Judge from charging on the facts of the case or from repeating the testimony to the jury in his charge.

"(a) In so charging the jury, his Honor committed further error, in that he limited recovery to a failure to make connection at Seneca; whereas, this is not the only element in said cause of action and is not the only cause of grievance against said defendant, it being respectfully submitted that one of the elements of said cause of action, and one cause of grievance against the said defendant, was its unauthorized

diversion of the plaintiff from the route indicated by said ticket.

"(b) It is submitted that plaintiff had a right to have submitted to the jury the question of her damage for being carried by Anderson and Seneca instead of by Greenville, and whether or not she would have made connection by going by Greenville is not controlling in the case, because it her ticket called for Greenville, it was the duty of defendant to carry her there, and its failure so to do gives a good cause of action for damages against the defendant, although, as a matter of fact, it may have carried her to another point where the same connection would have been made, and in charging the jury as hereinabove complained of, his Honor entirely eliminated this element from the case, and makes the whole cause of action depend on failure to make connection.

"IV. It was error in his Honor to charge the jury as follows: 'Now, gentlemen, negligence is generally said to be the want of due care. A railroad is required to exercise care with its passengers. It takes their money and agrees to transport them and is bound to exercise ordinary care,' because:

"(a) A railroad company carrying passengers is required to exercise the highest degree of care known to the law, and it is not sufficient that they exercise only ordinary care.

"(b) A common carrier cannot discharge itself from liability to a passenger by showing that it exercised towards its passenger ordinary care, and his Honor committed error in instructing the jury that all that was required of the defendant in this case was to exercise ordinary care.

"V. His Honor further erred in charging the jury that all that was required of the railway company was to exercise such care as a man of ordinary prudence would do, and in making the test that of a man of ordinary prudence, or an ordinarily prudent man, it being respectfully submitted that a common carrier of passengers is required to exercise a much higher degree of care towards its passengers than is

required of a man of ordinary prudence or an ordinarily prudent man.

"VI. His Honor committed error in charging the jury that the burden of proof was on the plaintiff to show negligence, it being respectfully submitted, in a case of this kind of injury to a passenger, whenever injury is shown at the hands of the carrier, the law presumes negligence and the burden of proof is then shifted, and the defendant is required to show that it was not negligent in causing the injury, or with reference to the matters complained of as producing the injury, and his Honor erred in not so instructing the jury, and in charging that the burden of proof is on the plaintiff throughout to prove every allegation of said complaint; whereas, his Honor should have instructed the jury that if they believed from the testimony that plaintiff was a pas-. senger, and while in the custody of the defendant as a passenger, received injury at the hands of the defendant, or from any agent or instrument under the control of the defendant while a passenger, the law would presume negligence, and unless defendant overcomes this presumption by a preponderance of the testimony, plaintiff would be entitled to a verdict.

"VII. His Honor further committed error in charging the jury as follows: 'I have listened with great care to this testimony. It has, while not extensive, covered considerable scope. Starting here, the main trouble seems to be, where does that ticket read? The ticket was lost,' the same being a charge on the facts of the case, in violation of the Constitution of the State, which prohibits a Circuit Judge from charging on the facts of a case.

"(a) In stating to the jury that the ticket was lost, his Honor instructed the jury with reference to a matter of fact in the case, in violation of the Constitution and to the prejudice of the plaintiff, because as the record shows, plaintiff demanded a production of the ticket, which was refused and shown to be in defendant's possession, and in such a case the presumption of the law is the production of the ticket would

have been to the damage of the defendant, and when his Honor instructed the jury as he did that the ticket was lost, he entirely relieved the defendant of this presumption of law, and any suspicion which might attach to it by reason of its failure to produce said ticket.

"(b) In saying to the jury, 'Starting here, the main trouble seems to be, where does the ticket read?' Because in so charging, his Honor instructed the jury with reference to a question of fact in the case and charged the jury on facts of the case, in violation of the Constitution, which prohibits him from so doing.

"(c) In stating to the jury, 'Starting here, the main trouble seems to be where does that ticket read?' 'The ticket was lost,' his Honor charged the jury on matters of fact in the case, in violation of the Constitution, which prohibits him from charging on the facts of the case.

"VIII. His Honor erred in charging the jury as follows: 'Before you can find for her, you must find that they were guilty of negligence and she must prove it by the preponderance of the evidence,' it being submitted, that if plaintiff, who was a passenger, proved injury at the hands of the defendant, and while in its charge, the law would presume negligence, and she would not be required to prove it by a preponderance of the evidence.

"IX. It was error in his Honor to permit the witness, Crymes, after plaintiff had closed her case in reply, to answer the following question: 'Mr. Crymes, did either of the tickets you sold to Mr. Latour read by way of Greenville?' The error being that defendant had closed its case.

"(a) The ticket was shown to have been in the possession of the defendant, and it was the highest evidence of how it read.

"(b) It was error in his Honor to hold that whereas, a party declines to produce a ticket, he has the right to offer secondary evidence as to its contents."

We will now consider these exceptions in their order:

1. We should state at the beginning that plaintiff's action is not grounded upon the failure of the defendant to make connection with the train of another road. Plaintiff could have made connection with train No. 37, at Greenville, S. C., on the very morning of the day she made connection with such train No. 37, at Seneca, S. C. Any reference, therefore, in the Judge's charge to the law regulating the connections was a purely groundless act. In order that a Judge's charge may work a reversal of the judgment, it must appear that the law embraced in the charge had a direct and effective connection with the case before the Court. What harm in a prosecution for assault and battery could a Judge's charge on the subject of arson have upon the first prosecution? The Judge's charge upon arson might or might not be the law, but his charge would have no reference to an assault and battery, and on that account would be disregarded if appealed from.

(a) There was never any question as to guaranteeing the connection at Greenville with the Air Line Road. The connection was made by either of two trains on that road, to wit: No. 39, which was due in Greenville, at 11.10, and No. 37 at 12.30. The train from Greenwood to Greenville reached the latter at 12.01. The connection with the Air Line Road with train No. 37 was actually made. Granted that the delay was a delay, still the connection was made on that very day.

(b) We do not see that the acting Circuit Judge eliminated anything in the shape of testimony from this case, so far as the connection at Greenville with the Air Line Railway was concerned; indeed, if the acting Circuit Judge was to be criticised for anything in relation to the connection at Greenville, we might say that he laid down the law too favorably for the plaintiff.

(c) Nor is there anything in this subdivision (c) which militates against the judgment here sought to be reversed. Granted, that the agent at Greenwood, Mr. Crymes,

did speak of ten or fifteen minutes interval between the time of arrival and departure of the trains at Greenville, yet such was the fact as developed by the testimony in the case.

(d) Nor do we see anything in subdivision (d), for, while it may be admitted, though it is not, that Mr. Crymes, defendant's agent at Greenwood, at the time of the sale of the ticket to the plaintiff, said that she would make close connection at Greenville on that day, and the plaintiff boarded train No. 37 at Seneca, and used the same in her attempt to reach Atlanta in time for the afternoon train towards Detroit. There is, therefore, no visible connection with the law pertaining to this contention between the parties, so far as any guaranteed connection is concerned.

(e) As to (e), as before remarked, any effort on the part of the presiding Judge to lay down the law of guaranteed connections would have been utterly futile if it had been attempted by him. This exception and subdivisions are overruled.

II. The alleged error in his Honor's charge in using the words: "The other side claims that she abandoned her trip," such language was used and based upon plaintiff's admission in her pleadings, which admission went through any testimony bearing upon that point. Therefore, it was no issue in the case and does not belong to the class of cases referred to where the Judge is forbidden to charge upon the facts. This exception and subdivision are overruled.

III. The words used by the presiding Judge, as referred to in this third exception, are mainly taken from, and was so announced by the Judge himself, the fourteenth paragraph of the plaintiff's complaint. The Judge had a right to read the pleadings to the jury. It is no charge upon the facts for a presiding Judge to read in the presence of the jury the allegations of the complaint, which are directly controverted by the answer. It but leads up to a correct apprehension by the jury of the issue between the

parties litigant.  We do not see how subdivision (a) could have wrought any injury to the plaintiff, for at Seneca, the plaintiff and her children were placed on board train No. 37.

Nor as to subdivision (b).  We had better remark that our attention was called, in reading the Judge's charge, to this question: "Mr. Cothran: I wish your Honor to instruct the jury that even if her ticket read via Greenville and the passenger was deflected, diverted to another route, that the plaintiff is not entitled to damages, unless under the allegations of the complaint, the jury believed from the evidence, that if the passenger had been carried the route called for by her ticket, she would have made connection, which she did not make at the other point."  This matter was then argued pro and con.  "Court: Gentlemen of the jury, I charge you, that if she bought that ticket by the way of Greenville, whether she would have missed connection, whether it was the best and most commodious route or not, she had the right to be carried by Greenville, unless she consented to go by a different route; and if by the diversion, without her consent, any damages were caused to her, whether in making connection, or any other inconvenience alleged in this complaint, she is entitled to a verdict."  Now, in view of this language, what error could be imputed to the presiding Judge on this particular line?  This exception and the subdivisions are overruled.

VI. and VIII. The respondent suggests that the error into which the appellant seems to have fallen arises from the appellant's confusing this with an action for personal injury received by a passenger, for he says in such case the proof of an injury by some instrumentality of the carrier raises a presumption against the carrier, but this is no such case; indeed, in our judgment, the presiding Judge very properly held that the allegations made by the plaintiff and denied by the defendant must be proven by the plaintiff.  These two exceptions are overruled.

VII. As to the seventh exception, it seems to us that this exception and its subdivisions cannot possibly lead to a reversal of the judgment here appealed from. There was nothing to which the testimony of the plaintiff had been directed, and the presiding Judge, in his charge, which was quoted but a while ago, gave her full benefit of the ticket being by way of Greenville. This exception is overruled.

IX. The ninth exception could lead to no important results. It is very evident that both parties to the contention saw the importance of the ticket purchased by plaintiff being "by way of Greenville." No harm resulted to either party thereby. This exception is overruled.

IV. and V. The fourth and fifth exceptions relate to the following instructions to the Circuit Judge: "Now, gentlemen, negligence is generally said to be the want of due care. A railroad is required to exercise care with its passengers. It takes their money and agrees to transport them, and is bound to exercise ordinary care. Well, where a man is doing anything and does not exercise such care as an ordinary prudent man would do—understand me, such care as an ordinary prudent man would do—if he does what any ordinary prudent man would not, that is an act of commission. The other is of omission. If he neglects to do what an ordinary prudent man would do, that is negligence, and it is the usual test laid down. Now, gentlemen, that is a matter for you, Did the railroad exercise ordinary care? Did it do any act that an ordinary prudent person, assuming the responsibility, would not have done, or did it neglect to do anything an ordinary prudent person would have done? If it did, it is guilty of negligence, and if damage resulted either by the omission or the commission, and such damages resulting therefrom, was the proximate cause, that is, the nearest cause, the party is liable for such damages as done; is liable for damages."

The complaint charged that on the journey from Greenwood to Atlanta, the plaintiff, while waiting for the con-

nection at Seneca, "was forced and required by the said defendant to remain for more than four hours in a cold room and without sufficient accommodations for herself and children," and that from this and other negligence of the defendant, she "suffered great mental strain, worry and anxiety, and sustained on account thereof a severe nervous shock to such an extent that she was made sick and ill, suffered great pain on account thereof," etc.

After the railroad had received the plaintiff as a passenger for transportation, it was charged not with ordinary care, as the Circuit Judge charged, but with the highest degree of care for her safety and exemption from injuries and unnecessary exposure, and there was some evidence of neglect of duty by the defendant in this regard. Even, however, if the charge is applied only to the duty of the railroad company to transport passengers on their advertised schedule time, it was erroneous. Railroads are exclusively relied on for all long distance travel. General uncertainty as to the time of running trains must necessarily, therefore, retard the progress of business enterprises, and must materially affect the prosperity of the country. Business engagements of the greatest moment often depend on the promptness of railroads in running on their schedule time. It is, therefore, reasonable that something more should be required of them in this regard, than the diligence and care which an ordinarily prudent man would exercise in the conduct of his own affairs. Nevertheless, safety and promptness are not to be put on the same plane, for promptness must always yield to safety. The sound and reasonable rule is to require that care and effort to avoid delay which is due under all the circumstances. In considering what is due care and effort, consideration is to be given to the immense public importance of prompt departure and arrival of trains, the ability of the particular railroad to meet the demands upon it, the degree of diligence in having engines and cars sufficient for the business of the roads, and any other facts that would tend to establish or disprove due care. A somewhat careful examination of the

authorities leads to the conclusion that this is the sound principle and that any effort to state a more definite rule would lead to confusion.   6 Cyc., 687; note to *Hansley* v. *R. R. Co.,* 32 L. R. A., 543; *Gordon* v. *R. R. Co.,* 13 Am. Rep., 97 (N. H.).

The fourth and fifth exceptions are, therefore, sustained, and the cause is remanded for a new trial.